**James CRAIG, as guardian ad litem and next friend of Korey K. Craig, a minor, and James Craig, individually, Plaintiff,**

v.

**F.W. WOOLWORTH CO., d/b/a Woolco, a corporation, Defendant.**

Civ. A. No. 92–G–1602–S.

United States District Court,
N.D. Alabama,
Southern Division.

Nov. 4, 1993.

R. Stephen Griffis, Thompson & Griffis, Birmingham, AL, for plaintiff.

Mark S. Boardman, Porterfield, Harper & Mills, PA, Birmingham, AL, for defendant.

## MEMORANDUM OPINION

GUIN, Senior District Judge.

This cause is before the court on the defendant's motion to alter or amend the judgment or, in the alternative, for a new trial as to the claims of James Craig. Having considered the motion, the submissions of counsel, the record of the case, and the applicable law, the court finds that this motion in both alternatives is due to be denied.

This product liability case arose as a result of a personal injury suffered by Korey Craig, minor son of James Craig. Korey Craig suffered a serious impalement injury when the seat failed on an exercise bicycle sold by the defendant to Mrs. Craig for use in their home.[1] Korey was a covered dependent on Mr. Craig's medical insurance policy at the time of the accident. With the exception of approximately $2,500.00, Korey's medical expenses were paid by Mr. Craig's insurer.

In the initial trial, evidence as to the insurer's payment of Korey's medical expenses was allowed to be presented to the jury. The jury returned a verdict in favor of Korey Craig in the amount of $45,000.00 for pain and suffering. The jury also returned a verdict in favor of James Craig in the amount of $2,500.00, the stipulated amount of medical expenses not covered by the insurer. These verdicts were set aside by the court upon motion by the plaintiffs. The court's findings and holdings regarding that motion were dictated into the record in open court at a hearing on the motion. Essentially, the court found that the verdict as to Korey Craig was clearly and grossly inadequate and contrary to the great weight of the evidence presented at trial. The court further found that it should not have allowed the presentation of evidence to the jury regarding payment of medical expenses by James Craig's

---

1. The sale took place some twelve years prior to the accident. The age of the unit was not at issue. Existence of a defect was alleged and proven at the initial trial.

insurance carrier. The court based this finding on its reading of Alabama Code §§ 6–5–522 and 6–5–524.

Section 6–5–522 of the Code of Alabama states in pertinent part:

> In *all product liability actions* where damages for any medical or hospital expenses are claimed and are legally recoverable for personal injury or death, evidence that the plaintiff's medical or hospital expenses have been or will be paid or reimbursed (1) by medical or hospital insurance, . . . shall be admissible as competent evidence *in mitigation of such medical or hospital expense damages . . . .* (Emphasis added).

Section 6–5–524 states that:

> Upon proof by the plaintiff to the court that the plaintiff is obligated to repay the medical or hospital expenses which have been or will be paid or reimbursed, *no evidence relating to such reimbursement or payment not otherwise admissible shall be admissible as a result of this division.* (Emphasis added).

The court interpreted section 6–5–524 as precluding the admission of evidence regarding payment of medical expenses by an insurer where the insurer has subrogation rights and the plaintiff makes proof of these rights. Prior to the second trial, the plaintiff in this case provided a copy of the applicable insurance policy which established the insurer's subrogation rights. The existence of these rights was not contested by the defendant.

Retrial was held on the issue of damages only, liability having been established at the initial trial. Evidence regarding payment by the insurer was excluded. The jury returned a verdict in favor of Korey Craig for $210,-

000.00 for pain, suffering, and mental anguish. A directed verdict in favor of James Craig was entered by the court in the amount of $44,694.57 for medical expenses, the amount stipulated to by the defendant. The defendant subsequently filed this motion.

The defendant bases its motion on the court's exclusion of evidence regarding the payment by James Craig's health insurance carrier of Korey Craig's medical bills incurred as a result of the accident made the subject of this suit. By way of this motion, the defendant raises for the first time Alabama Code § 12–21–45.[2] The defendant argues that under this statute evidence of an insurer's reimbursing or paying medical expenses is admissible in all civil suits. The defendant further argues that this later enacted statute abrogates section 6–5–524.[3]

Section 12–21–45 reads in pertinent part:

> (a) In *all civil actions* where damages for any medical or hospital expenses are claimed and are legally recoverable for personal injury or death, *evidence that the plaintiff's medical or hospital expenses have been or will be paid or reimbursed shall be admissible as competent evidence.*

> (c) Upon proof by the plaintiff to the court that the plaintiff is obligated to repay the medical or hospital expenses which have been or will be paid or reimbursed, *evidence relating to such reimbursement or payment shall be admissible.* (Emphasis added).[4]

■ A basic finding must be made prior to moving further into the disposition of the matter *sub judice.* Underlying the court's

---

**2.** The court notes that in its motion the defendant cites Alabama Code § 12–21–24 as its authority. Since no such section currently exists in the Code and the substance of the motion obviously refers to section 12–21–45, the court takes the motion to be based upon section 12–21–45.

**3.** Section 6–5–524 was passed in 1979. Section 12–21–45 was passed in 1987.

**4.** According to the title to Act 87–187 from which this code section was derived, subsection (c) was enacted "to provide that the evidence of the plaintiff's obligation to repay the medical or hos-

pital expenses shall be admissible where the plaintiff is obligated to repay the reimburser." This subsection is an effort to afford the plaintiff an opportunity to offset the prejudicial effect of the evidence admitted under subsection (a). The court finds that this subsection fails of its essential purpose. As discussed hereinafter, the court finds that the prejudicial effect of the evidence allowed by subsection (a) far outweighs any relevancy this evidence may have. Evidence regarding subrogation obligations cannot overcome the prejudicial effect created by allowing the jury to learn of the existence of insurance coverage.

analysis is its finding regarding the words *reimbursement or payment* as used in section 12–21–45(c) and section 6–5–524. The court finds that these words refer to subrogation payment by the insured to the insurer in section 12–21–45. The court further finds that these same words in section 6–5–524 refer to payment by the insurer to the insured.

 Section 12–21–45 is contained in chapter 21 of title twelve which interestingly is entitled Evidence and Witnesses. This chapter is clearly the codification of the Alabama *state courts'* rules of evidence. As previously found by one of the undersigned's brother judges on this court, section 12–21–45 is clearly a rule of evidence and as such has no application in a case brought in federal court on the basis of diversity jurisdiction.[5] *Killian v. Melser,* 792 F.Supp. 1217 (N.D.Ala. 1992). As so aptly stated in *Killian,* "[t]he Alabama Legislature cannot, *for the federal courts,* convert the 'prejudicial' into the 'competent' and the 'admissible' simply by changing their names." *Killian v. Melser,* 792 F.Supp. 1217, 1218–19 (N.D.Ala.1992) (emphasis in the original).

 This court looks to the Federal Rules of Evidence in deciding questions of admissibility, not to state rules of evidence. Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Of course, all relevant evidence is not necessarily admissible. Rule 403 of the Federal Rules of Evidence states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." The court finds in the case at bar that the evidence of payment by the insurer of the medical expenses incurred was properly excluded as irrelevant under Rule 401 of the Federal Rules of Evidence. The court

further finds that, even were this evidence deemed to be relevant, it was properly excluded under Rule 403 as unfairly prejudicial, confusing to the jury as to the issues, and misleading to the jury.

 Alternatively, the court finds that, even were section 12–21–45 taken as a substantive provision with application to suits brought in federal court under diversity jurisdictional provisions, section 6–5–524 would still be the appropriate statute to apply to this issue of admissibility. As a matter of statutory interpretation, whenever possible a specific statute relating to a specific subject is taken as an exception to a statute of general applicability in an effort to harmonize the two. *Ex parte Jones Manufacturing Company, Inc.,* 589 So.2d 208, 211 (Ala.1991). Here, section 6–5–524 applies specifically to product liability cases while section 12–21–45 applies to civil suits generally. Further, the law does not favor repeal of statutes by implication. Nothing in section 12–21–45 indicates a legislative intent to repeal section 6–5–524. The law favors construction which harmonizes statutory provisions. *Ex parte Jones Manufacturing Company, Inc.,* 589 So.2d 208, 211 (Ala.1991). Finding that section 6–5–524 may stand as an exception to section 12–21–45, if the latter is taken as substantive, is in keeping with these well established doctrines of statutory interpretation.

 The court is well aware of the basic tenet that the trial court has a duty to avoid reaching a constitutional issue unless it is essential to the disposition of a case. However, the court is so strongly convinced that section 12–21–45 is unsound as written and has no application in the federal courts that the court finds it appropriate to make an alternative finding based on constitutional grounds. Should appeal be taken and this court's denial of this motion on the grounds heretofore discussed is not upheld on those grounds, the appellate court may turn to this alternative finding based on constitutional grounds.

---

**5.** Section 6–5–522 gives a substantive right by the phrase "in mitigation of such medical or hospital expense damages." Section 6–5–524 acts as savings provision allowing the plaintiff to

prevent the admission of evidence regarding insurance coverage by proving to the court the existence of subrogation rights.

The court finds that were section 12–21–45 taken as a substantive provision, it is egregiously unconstitutional. In the guise of a procedural change, this provision potentially deprives insurers of their substantive subrogation rights without due process of law.[6] Such deprivation is a violation of insurers' substantive due process rights as guaranteed by the fifth (as to federal legislation) and fourteenth (as to state legislation) amendments. This statute epitomizes the type of arbitrary governmental action the United States Supreme Court has sought to prevent in its development of the concept of substantive due process. See, Bernard Schwartz, *Constitutional Law,* section 100, Substantive Due Process (1972).

Section 12–21–45 opens the door to chaos. This provision allows the jury to hear evidence of third party payment of medical expenses without giving it any guidelines for applying this information to its deliberations. Each jury would be allowed to decide for itself whether bargained for subrogation rights should be honored. Should the jury find in favor of the plaintiff, it can, at its whim, shift the loss from the culpable defendant to the innocent insurer. Wildly inconsistent verdicts on the same issue are thus invited. This license results in a deprivation of substantive due process. A government of men rather than law is thereby created in open contravention of the purpose of the Constitution and the laws promulgated thereunder. This deprivation of due process requires that the statute be stricken for violation of the due process provision of the fourteenth amendment.

The defendant's motion to alter or amend the judgment or, in the alternative, for a new trial as to the claims of James Craig is due to be denied on all grounds discussed herein.

---

**6.** The legislature clearly has the power to abolish subrogation rights by substantive statute. It has not chosen to do so. Instead, by enacting this procedural statute it has effectively and impermissibly delegated this legislative power to individual juries.